## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                Case No. 21-cr-20708

v.

                                Hon. Denise Page Hood

HARMOND TIMOTHY ULMER,

     Defendant.

_____/

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE (ECF No. 16) AND MOTION TO DISMISS FOR SECOND AMENDMENT VIOLATION (ECF No. 17)

## I.      BACKGROUND

On November 23, 2021, the grand jury indicted Defendant Harmond Timothy Ulmer with one count of Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1) and a forfeiture allegation as to the firearm involved, 18 U.S.C. § 924(d) and 28 U.S.C. § 2462(c).   (ECF No. 1) This matter is before the Court on Ulmer's Motion to Suppress Evidence and Motion to Dismiss for Second Amendment Violation.   (ECF Nos. 16, 17) Briefs have been filed and an evidentiary hearing was held on the Motion to Suppress.

Ulmer asserts that on September 24, 2021, at approximately 6:50 pm, he was suddenly approached by Officers Erik J. Patterson, Michael A. Ayala, and Dillon J.

Kenney, who were driving through the neighborhood. The police vehicle's dashboard camera footage (Dash Camera, 18:46:59) shows that Ulmer was exiting a dark sedan parked on a residential street, facing forward, and standing outside the driver's seat. The police vehicle stopped a few feet from Ulmer, which Ulmer claims was trapped him between his own car and the passenger side of the police car.  Ulmer further claims that fearing for his safety, he began to run away from the officers.  Within seconds, all three officers opened their doors (Patterson's Camera, 18:47:09; Rear Camera, 18:47:07; Kenney's Camera, 18:47:09). Officers Patterson and Ayala exited the vehicle and began running towards Mr. Ulmer. (Patterson's Camera, 18:47:09; Rear Camera, 18:47:07).   Officer Patterson arrested Mr. Ulmer after he fell to the ground and then put him in the rear seat of the squad car. (*Id*.). Following a search, a firearm and a magazine were eventually discovered in a lot adjacent to the path Ulmer and the officers took, resulting in Ulmer charged with a single count of possession of a firearm as a felon.

The Government claims the officers were on routine patrol in the Northwest part of Detroit.   As they drove up Lesure Street, they saw Ulmer get out of a black car.   It was still light out when they approached Ulmer who was standing on the street next to his car.   As Ulmer walked past the police car, the two officers closest to him saw the grip of a pistol sticking out of his front right pocket.   After seeing

the gun, the two officers asked Ulmer, while getting out of the car at the same time, if he had a concealed pistol license.   Ulmer immediately fled without responding to the question.   The officers chased Ulmer, who ran between houses.   The officers saw him pull a gold handgun from his front right pocket and throw it over a fence.   Ulmer followed the gun over the fence.   The chase lasted a few more seconds before Ulmer fell going over a second fence.   The officers seized and handcuffed Ulmer.   The gun was recovered in the area where Ulmer threw it.

Officer Jacob Patterson testified at the evidentiary hearing.   He was employed with the Detroit Police Department for six years, and since August 2023, is currently with the Warren Police Department.   While with the DPD, he was with the Tactical Services Unit providing precinct support, proactive patrol and executing search warrants.   The proactive unit drives around looking for crime afoot.   Officer Patterson has been on more than 500 patrols and made arrests over 200 times for firearms-related offenses.   Officer Patterson testified that proactive patrol is not a routine patrol assignment.   The officers are looking for more violent crimes before they occur and for people who might be illegally possessing guns. While on proactive patrol, everyone is under suspicion.

During the September 24, 2021 incident, Officer Patterson indicated he was on patrol with Officers Ayala and Kenney.   Officer Patterson sat in the front

passenger seat, Officer Kenney was the driver and Officer Ayala was in the rear passenger seat behind Officer Patterson.   As they were traveling northbound on Lesure towards Chalfonte, they observed Ulmer by a car, standing outside of the car.   Officer Patterson observed Ulmer exit a black sedan parked on the east side of Lesure facing northbound.   Ulmer was not doing anything remarkable when he was approached, other than getting out of his vehicle. As Ulmer turned, he was facing Officer Patterson.   Ulmer began walking southbound on Lesure as the Officers were going north.   Officer Patterson observed a black pistol grip of a handgun protruding from Ulmer's front right pants pocket.   Officer Patterson indicated he was a couple of feet from Ulmer.   Officer Patterson asked Ulmer if he had a CPL (concealed pistol license) while simultaneously exiting the vehicle. Ulmer began to flee on foot and Officer Patterson followed in pursuit.   While pursuing Ulmer, Officer Patterson told Ulmer to "drop the gun" and "I'm going to shoot you."   Officer Patterson observed Ulmer recover from his right front pocket the handgun and threw it over a fence.   Ulmer then jumped over the fence himself. They then jumped more fences and Ulmer eventually fell after jumping a fence and he was taken into custody.   The pistol and a magazine was later recovered.

Officer Ayala also testified at the evidentiary hearing.   He indicated he was currently with the Detroit Police Department, and had been with DPD for about

five years.   He had no prior law enforcement background.   Officer Ayala testified

they patrolled high crime areas with the tactical services unit which covers all of

Detroit.   The patrol goes to certain precincts as back up and if there are high

shooting incidents.   Officer Ayala had about 100 firearm offences arrests,

including carrying concealed weapons and felon in possessions.   He has observed

firearms on a person about 100 times.

On September 24, 2021, Officer Ayala testified that they were directed to

patrol the Second Precinct. They were in an SUV police scout car, a black explorer

with yellow lettering Detroit Police, with lights.   He was with two other officers,

Kenney and Patterson.   Officer Ayala was in the rear passenger side seat, Officer

Kenney was the driver and Officer Patterson was in the front passenger seat.

They were traveling north on Lesure when they observed Ulmer getting out of a

car.   Officer Ayala observed an imprint of a gun in Ulmer's right front pants

pocket and a pistol grip.   The gun was not obstructed by Ulmer's sweatshirt.

Ulmer was 4-5 feet from Officer Ayala.   Officer Ayala was facing Ulmer since

Ulmer was walking southbound, while the Officers were going northbound.

When they passed Ulmer, Officer Ayala saw the gun.   Officer Ayala asked Ulmer

had a CPL but Ulmer did not respond and immediately began to run.   Officer

Ayala chased after Ulmer and saw Ulmer throw the pistol over a fence, which was

later recovered, with the magazine.   Officer Ayala indicated his body camera was not operational that day.   It initially worked at the start of his shift, but later malfunctioned.

## II.   ANALYSIS

### A.   Motion to Suppress

The Supreme Court has identified three types of reasonable, permissible, and warrantless encounters between the police and citizens:   1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; 2) a temporary involuntary detention or *Terry* stop which must be predicated upon "reasonable suspicion;" and 3) arrests which must be based upon "probable cause."   *United States v. Pearce,* 531 F.3d 374, 380 (2008).   Officers may conduct a "reasonable search for weapons for the protection of the police officer" when they have reason to believe that they are "dealing with an armed and dangerous individual."   *Terry v. Ohio,* 392 U.S. 1, 27 (1968).   In evaluating a *Terry* stop, the court engages in a two-part analysis of the reasonableness of the stop:   whether there was a proper basis for the stop, and, if the stop was proper, whether the degree of intrusion was reasonably related in scope to the situation at hand.   *United States v. Smith,* 594 F.3d 530, 536 (6th Cir. 2010).   "Reasonable suspicion" is a less demanding

standard then "probable cause." *United States v. Mays,* 643 F.3d 537, 542 (6th Cir. 2011)   It requires a showing considerably less than preponderance of the evidence, but the Fourth Amendment requires at least a minimal level of objective justification for making the stop. *Id.* (citations omitted).   The officers must be able to articulate more than an inchoate and unparticularized suspicion or hunch. *Id.*   The officers' determination is made in light of the totality of the circumstances.   *Id.*, citing *United States v. Arvizu,* 534 U.S. 266, 273 (2002). Temporary stops where an officer suspects the person is presently engaged in a criminal conduct or soon will be, is permitted, including ordering cars to stop and the occupants to exit.   *United States v. Hudson,* 405 F.3d 425, 431 (6th Cir. 2005).

Michigan law makes it unlawful (a crime) for a person to "carry a pistol concealed" on her or his person or in a vehicle without a license to do so. M.C.L. § 750.227(2).   A person must have a license on their person "at all times he or she is carrying a concealed pistol" and must "show" the license "upon request by [a] peace officer." M.C.L. § 28.425f. *See also* M.C.L. § 750.231a (a license is an exception to the prohibition against carrying a concealed pistol).   Courts have held that a defendant has the burden of producing a license to carry a concealed weapon, and that Government need not show the absence of a license to establish the felony offense of carrying a concealed weapon under M.C.L. § 750.227(2). *See*

*People v. Henderson*, 218 N.W.2d 2 (Mich. 1974); *People v. Perkins*, 703 N.W.2d 448 (Mich. 2005); *United States v. Graham*, No. 21-20433, 2022 WL 4099447 (E.D. Mich. Sept. 7, 2022).

Ulmer requested an evidentiary hearing on whether his Fourth Amendment rights were violated when the officers stopped him while he was standing by his vehicle. He claims his right side was not visible to the officers, and, therefore, the officers had no probable cause to stop or ask him whether he had a license to carry a gun. Based on the testimony, the Court determines that officers had reasonable suspicion and probable cause to ask Ulmer if he had a license to carry a concealed pistol, probable cause to stop him after he ran from the officers. The evidence seized–the gun and magazine, will not be suppressed.

The officers asked Ulmer whether he had a CPL after they saw a weapon in Ulmer's front right pants pocket. Ulmer did not respond to their question about the CPL but instead ran off. Ulmer was not seized by the officers at the time he was asked about the CPL. The video cameras from the car and Officer Patterson does not specifically show whether the officers saw the gun on Ulmer's front right pants pocket. The videos also do not clearly show that there was a gun in Ulmer's front right pants pocket. However both officers testified that they saw the pistol grip protruding from Ulmer's front right pants pocket and that they were

approximately 2 to 4 feet from Ulmer as he was walking past the officers walking south on Lesure, while the officers were driving north on Lesure.   The front right side of Ulmer would have been seen by both officers as they were driving past Ulmer since the two officers were on the right passenger side of the vehicle.

The officers both testified that they saw Ulmer throw the gun over one of the fences, and it was later recovered around the area where the officers indicated it was thrown.   There was no further evidence submitted that the gun was abandoned.

### B.    Motion to Dismiss under the Second Amendment

Ulmer seeks to dismiss the Indictment based upon the Supreme Court's ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022).   He argues that under *Bruen*, his conduct is presumptively protected, because possession of a firearm comes within the Second Amendment's plain text and that there is no exception for those with a felony conviction.

The Government responds that the felon in possession statute is consistent with the Sixth Circuit's prior review of historical scholarship, which establishes that gun restrictions were not limited to those deemed to be dangerous but were instead directed at citizens who were not law-abiding and responsible.   Section 922(g)(1) is constitutional under *United States v. Carey*, 602 F.3d 738, 740–41 (6th

Cir. 2010) which held that under *D.C. v. Heller*, 554 U.S. 570, 626 (2008), the Second Amendment right is not unlimited, and, in fact, it is specifically limited in the case of felon prohibitions.").   The Government further cites *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (noting that Heller did not recognize a broad "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose").   Although *Bruen* struck down a New York law and articulated the test for evaluating gun-safety laws, the Government argues that nothing in *Bruen* undermined *Heller's* conclusions that prohibitions on felon armament are presumptively valid, citing *Bruen*, 142 S. Ct. at 2157 (Alito, J. concurring) ("Nor have we disturbed anything we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns.").

A defendant may challenge a defect in an indictment, including its constitutionality, via a pretrial motion to dismiss, provided "the basis of the motion is then reasonably available, and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(B). A defendant may challenge the constitutionality of a statute facially or as applied.   A statute is facially unconstitutional if it is "unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). In contrast, an as applied challenge alleges the statute in question is unconstitutional

as applied to the defendant's alleged conduct. *Carroll v. City of Cleveland*, 522 F. App'x 299, 306 (6th Cir. 2013).   When ruling on a motion to dismiss an indictment, the court accepts the factual allegations therein as true, and determines only whether the indictment is valid on its face. *See United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.   In the *Bruen* opinion, the majority makes clear that the issue before the court was the right of "law-abiding citizens" to carry handguns for self-defense.   The opinion begins:

> In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an **ordinary, law-abiding citizen** to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that **ordinary, law-abiding citizens** have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Bruen*, 142 S. Ct. at 2122 (emphasis added).   The majority subsequently stated that the Second Amendment focuses on the rights of "law-abiding" citizens:

> The Second Amendment "is the very *product* of an interest balancing by the people" and it "surely elevates above all other interests **the**

**right of law-abiding, responsible citizens to use arms**" for self-defense. *Heller*, 554 U.S. at 635, 128 S.Ct. 2783. *Bruen*, 142 S. Ct. at 2131 (emphasis added). Specifically noting the plaintiffs before the court, the majority found that the Second Amendment protects "law-abiding" citizens.

It is undisputed that petitioners Koch and Nash—**two ordinary, law-abiding, adult citizens**—are part of "the people" whom the Second Amendment protects. *See Heller*, 554 U.S. at 580, 128 S.Ct. 2783.

*Bruen*, 142 S. Ct. at 2134 (emphasis added). The Court's holding likewise specifies that the case centers on law-abiding citizens:

> New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents **law-abiding citizens** with ordinary self-defense needs from exercising their right to keep and bear arms. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*Id.* at 2156 (emphasis added). The concurrences by Justices Alito and Kavanaugh further clarify that *Bruen*: (1) is limited to "law-abiding citizens;" (2) does not impact the holdings in *Heller* or *McDonald*; and (3) does not prohibit governmental regulation of possession of firearms by felons nor extend the rights of felons to possess firearms.

Recently, the Supreme Court applied *Bruen*, upholding the constitutionality of § 922(g)(8)'s prohibition of persons subject to restraining orders from possessing guns. The Supreme Court cited *Heller* again for the proposition that prohibitions "on the possession of firearms by felons and the mentally ill[ ] are

presumptively lawful." *United States v. Rahimi*, No. 22-915, —— U.S. ——, 142 S.Ct. 1889, 1902 (June 21, 2024) (internal quotations omitted).  The opinion stated that "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearms in the home." *Id*.

The statute, which this Court finds as constitutional, as applied to Ulmer, is still relevant because the *Bruen* holding applied to "law-abiding citizens" and does not prohibit governmental regulation of possession of firearms by felons, as recently noted by the Supreme Court in *Rahimi*.  Based on the above, Ulmer's Motion to Dismiss based on the Second Amendment is denied.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Harmond Timothy Ulmer's Motion to Suppress Evidence **(ECF No. 16)** is DENIED.

IT IS FURTHER ORDERED that Defendant Harmond Timothy Ulmer's Motion to Dismiss for Second Amendment Violation **(ECF No. 17)** is DENIED.

s/Denise Page Hood

DENISE PAGE HOOD
United States District Judge

DATED:  July 18, 2024